**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JENNIFER C. PALMER,

Plaintiff,

v. No. 1:25-cv-1005 DLM

FRANK BISIGNANO,
Commissioner of the Social
Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Jennifer C. Palmer's Motion to Reverse and Remand to Agency. (Doc. 16.) Having considered the record, submissions of counsel, and relevant law, the Court will **DENY** the motion.

## I. Procedural History

On December 12, 2022, Palmer protectively filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), and an application for supplemental security income (SSI) under Title XVI. (Administrative Record[1] (AR) at 219–30.) Palmer alleged a disability onset date of October 1, 2022. (*Id.* at 219, 223.) Disability Determination Services (DDS) determined that Palmer was not disabled initially and on reconsideration. (*Id.* at 70–99.) Palmer requested a hearing with an Administrative Law Judge (ALJ). (*Id.* at 136–37.)

Both Palmer and a vocational expert (VE) testified during the *de novo* hearing. (*See id.* at

[1] Document 11 contains the sealed Administrative Record. (Doc. 11.) I cite the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

39–69.) ALJ Michael Leppala issued an unfavorable decision on October 7, 2024. (*Id.* at 22–31.) Palmer submitted a Request for Review of Hearing Decision/Order to the Appeals Council (*id.* at 203–05), which the Council ultimately denied on August 15, 2025 (*id.* at 1–3). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not "doing substantial gainful activity"; (2) she has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) her impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect her capacity to work and what she can still do despite her limitations. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given

[her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Leppala found that Palmer "meets the insured status requirements of the Social Security Act through March 31, 2026[,]" and "has not engaged in substantial gainful activity since October 1, 2022, the alleged onset date." (AR at 24 (citing 20 C.F.R. §§ 404.1571–76, 416.971–76).)

At Step Two, the ALJ concluded that Palmer "has the following severe impairments: chronic L5 spondylosis contributing to moderate degenerative changes of the lumbosacral spine and obesity." (*Id.* at 25 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)

At Step Three, the ALJ found that Palmer "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525–26, 416.920(d), 416.925–26).)

At Step Four, the ALJ considered the evidence of record and found that Palmer:

> has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that [she] is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for about 6 hours in an 8-hour workday, and sitting for about 6 hours in an 8-hour workday, all with normal breaks. She is further limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds and occasionally balancing, stooping, kneeling, crouching, and crawling.

(*Id.* at 25–26.) Based on his review of the record and the testimony of the VE, ALJ Leppala found that "there are jobs that exist in significant numbers in the national economy that [Palmer] can perform." (*Id.* at 30 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a).) The ALJ concluded that Palmer "has not been under a disability . . . from October 1, 2022, through the date of [the ALJ's] decision." (*See id.* at 31 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

## III. Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Palmer argues remand is warranted because the ALJ failed to properly assess her

allegations of pain and other symptoms, and because the RFC did not adequately include her limitations. (*See* Doc. 16 at 1–2.) I will deny the motion.

### A. Palmer has not demonstrated reversible error in the ALJ's analysis of her subjective allegations of pain and walking limitations.

The ALJ uses a two-part framework to evaluate a claimant's subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the claimant's] symptoms . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). After finding such an impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c). Relevant factors the ALJ may consider include: (1) the claimant's daily activities; (2) "[t]he location, duration, frequency, and intensity of pain or other symptoms;" (3) "[f]actors that precipitate and aggravate the symptoms;" (4) details about medications the claimant has taken; (5) other treatments used for symptom relief; (6) other measures the claimant employs for symptom relief; and (7) other symptom-related limitations or restrictions. *See* 2017 WL 5180304, at *7–8.

Palmer does not argue that the ALJ failed to sufficiently follow the two-step process or that any one factor was deficient. (*See* Doc. 16 at 13–17.) Rather, she asserts that the ALJ's analysis of her allegations of pain and limitations in her ability to walk "is unsupported and contains legal error." (*Id.* at 13.)

In support of his finding regarding the consistency of Palmer's allegations of pain and

walking limitations, the ALJ summarized the record evidence as follows. He first noted Palmer's hearing testimony and self-reports that she struggles to perform many activities of daily living (getting dressed, cooking, etc.) and physical activities (bending, standing, walking, etc.) due to pain and difficulty moving around. (*See* AR at 26 (citing, *e.g.*, AR at 50, 294–95, 299, 339).) The ALJ considered the Function Report completed by Palmer's husband, who reported that Palmer can walk only 10–15 steps before needing to rest. (*See id.* (citing AR at 321, 325–27).) Palmer testified that she was prescribed a cane after her first back surgery, and the ALJ noted her complaints of frequent falls despite using the cane. (*See id.* at 26–27 (citing AR at 50).) The ALJ also mentioned Palmer's testimony that she "elevate[s] her left leg up to 12 hours per day with heat or ice on it due to severe swelling." (*Id.* at 26 (citing AR at 50).)

The ALJ reviewed Palmer's pain medications, such as Gabapentin, Morphine, Ibuprofen, and Oxycodone, and their side effects, including dizziness, sleepiness, and weight gain. (*Id.* at 26–27 (citing AR at 52–53, 301, 327, 485); *see also* AR at 486.)

The ALJ summarized medical records chronicling Palmer's back and leg pain, taking care to highlight her continued complaints of pain despite multiple spinal surgeries (*id.* at 27 (citing AR at 383, 395, 405–06, 459–61)), nerve ablation procedures and injection therapy (*id.* (citing AR at 402, 406, 485)), and physical therapy (*id.* (citing AR at 402, 411)). The ALJ also summarized results from diagnostic tools, such as CT imaging that "showed neuroforaminal stenosis at several levels"; MRI scans that revealed "postoperative changes in the left at L5-S1 with a possible compromise of the L5 dorsal nerve root[,] multilevel T2 disc dislocation[,] disc space narrowing[,] mild bulges[,] and mild nonspecific enhancement at the L5-S1"; and x-ray imaging showing "mild grade 1 anteriolisthesis at L5-S1, advanced degenerative changes at L5-S1 with disc space narrowing and facet arthropathy, and mild disc space narrowing and endplate spurring at L3-L4."

(*Id.* (citing AR at 451, 459–61, 490).)

ALJ Leppala did not shy away from treatment records that supported Palmer's complaints of pain. (*See, e.g.*, *id.* at 27–29 (citing AR at 393 (Mar. 12, 2023 consultative examination noting pain associated with squatting, rising, walking, etc., as well as "back pain and right leg pain throughout the examination"), 402–06 (May 15, 2023 record noting complaints of right low back and right leg pain at 8/10), 447–48, 451–52 (July 29, 2022 record noting "stinging, burning pain of right lumbar back with associated swelling and blistering[,] . . . right hip pain and right lumbar back pain radiating down her right leg"), 485, 487 (Oct. 31, 2023 record noting complaints of pain radiating down the left lower extremity "with pins and needles feeling" and "10/10 low back pain radiating to neck[] and down posterior left leg to mid thigh").)

The ALJ also reviewed treatment records relevant to Palmer's alleged walking limitations, including a March 2023 consultative examination that revealed an "antalgic gait[2] due to back and right leg pain, without the use of an assistive device[,] . . . 4/5 hip flexion with no palpable leg spasms[,] . . . pain in . . . right hip groin during . . . right straight leg test, but her straight leg tests were negative bilaterally[,] . . . some decreased back extension, . . . difficulty with walking on her heels and toes due to right leg pain" and "difficulty with balance on the tandem walk . . . ." (*Id.* at 27 (citing AR at 391–93).) He noted that while Palmer "testified to severe edema and the need to elevate her leg most of the day, . . . her consultative examiner noted no clubbing, cyanosis, or edema in her extremities." (*Id.* at 28 (citing AR at 392).) Critically, the consultative examiner "found no physical limitations[,]" which the ALJ found "inconsistent with [the examiner's] own examination showing antalgic gait, difficulty with walking on her heels and toes, difficulty with

[2] "An antalgic gait occurs when you walk with a limp because of pain." *What is an Antalgic Gait*, WebMd, https://www.webmd.com/pain-management/what-is-antalgic-gait (Mar. 17, 2026).

balancing on tandem walk, the inability to hop on one foot bilaterally, and lower back pain and leg pain." (AR at 28 (citing 393, 395–96).) The ALJ also detailed a May 2023 treatment record from David Woog, M.D., Palmer's pain management physician, who observed that Palmer's gait was "[s]table and fluid" with "[l]ong, even strides" and the ability to "[t]urn[] around without difficulty." (*Id.* (citing AR at 404).)

After reviewing this evidence, the ALJ found that Palmer's statements about her symptoms were "inconsistent because despite the allegations of being unable to walk more than 10–15 steps, she had mostly normal exams other than back pain with normal range of motion." (AR at 28 (citing AR at 404, 485–86).) In support, ALJ Leppala cited two records: (1) Dr. Woog's May 15, 2023 treatment note observing that Palmer's gait was "[s]table and fluid" with "[l]ong, even strides" and that she could "[t]urn[] around without difficulty" (*id.* (citing AR at 404)); and (2) an October 31, 2023 emergency room record that recorded Palmer's complaints of low back pain radiating to her neck and left leg after a nerve ablation together with findings of a normal range of motion both generally and in her cervical back (*see id.* (citing AR at 485–86)).

Palmer argues that "[t]he ALJ did not explain why he did not believe her complaints of pain when she was receiving surgeries, ablations, and strong narcotics to treat her pain." (Doc. 16 at 14.) Contrary to Palmer's argument, the ALJ did not flatly disbelieve her complaints of pain, he simply found that they were inconsistent with the limiting effects she claimed as demonstrated in the record. (*See* AR at 28.) The Court finds that ALJ Leppala's conclusion is supported by substantial evidence, and Palmer fails to show that this conclusion constituted legal error.

The ALJ also noted that Palmer watched TV, read daily, could follow written and spoken instructions, and could "wash[] dishes until she could not stand anymore." (*See id.* (citing AR at 324–25, 391).) Palmer argues that in citing these records, "[t]he ALJ failed to paint the full

picture." (Doc. 16 at 15.) She points to her husband's third-party function report, which described more severe limitations. (*See id.* (citing AR at 320–27).) The Court notes, however, that the ALJ mentioned many of these limitations earlier in the decision. (*See* AR at 26.) Thus, the Court finds no error on this point.

Palmer contends that "[i]f the ALJ was in doubt regarding whether [her] complaints of pain were consistent with the evidence," he need only have looked to Dr. Woog's treatment notes, where he concluded that Palmer's "symptoms fit with the MRI findings very well." (*See* Doc. 16 at 14 (quoting AR at 405).) She summarily asserts that the ALJ "pick[ed] and [chose] amongst the evidence to ignore doctor's opinions that support[] the consistency of [her] allegations." (*Id.* (citing *Bryant v. Commissioner, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018)).) Notably, Palmer does not argue that the ALJ inadequately analyzed any medical opinion. Even so, Palmer's reliance on this record does not support a finding of error, as Woog's own examination notes do not establish disabling pain or that Palmer described walking limitations due to pain. Instead, Woog's notes revealed Palmer's complaints of "right low back pain radiating into the leg" and "some subjective weakness of the right foot[,]" and that she "feels like her right foot/leg will drag a bit when she walks." (*See* AR at 402, 405.) On examination, Woog recorded that Palmer's gait was "[s]table and fluid[ with l]ong, even strides." (*See id.* at 404.) He also noted that she "[t]urns around without difficulty." (*Id.*) Palmer visited Woog five times, and each record reflects these same notes and findings. (*See id.* at 402, 404–05 (May 15, 2023), 411, 414–15 (Feb. 13, 2023), 419, 422 (Apr. 17, 2023), 427, 429–30 (Apr. 23, 2023), 435, 437–38 (May 9, 2023).) Even more telling is Woog's assessment that Palmer showed "*mild* systemic disease with *no functional limitations*[,]" a point the ALJ referenced when discussing Palmer's "mostly normal physical examinations." (*See* AR at 404 (emphasis added); *see also id.* at 29 (citing AR at 395–96, 404, 414).) Thus, Woog's notes

appear to refute Palmer's argument. At the very least, they provide support for the Commissioner's position that the ALJ's decision is supported by substantial evidence. (*See* Doc. 22 at 8–9 (citations omitted).) *See also Lax*, 489 F.3d at 1084 (quotation omitted) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

Finally, Palmer argues that "[t]he ALJ failed to assess whether [she] had an antalgic gait or whether she needed an assistive device." (Doc. 16 at 16 (citing AR at 28).) Yet at Step Three, in concluding that Palmer did not meet listing 1.15 or 1.16, the ALJ found that "the medical evidence of record did not show [she] required an assistive device . . . ." (*See* AR at 25 (citing AR at 391, 404, 414).) Thus, Palmer is incorrect—the ALJ assessed that she does *not* need an assistive device. This finding is supported by substantial evidence: not only did Woog's observations regarding Palmer's "stable and fluid gait" *not* mention a cane (*see id.* at 28 (citing AR at 404)), but the "March 2023 consultative examination showed antalgic gait due to back and right leg pain without the use of an assistive device." (*See id.* (citing AR at 391).) In fact, despite notes that Palmer "had some difficulty with balance on tandem walk[,]" the consultative examiner noted that Palmer *did not need* an assistive device. (*See* AR at 395–96.)

In sum, substantial evidence supports the ALJ's findings regarding Palmer's subjective allegations of pain and other symptoms, and Palmer fails to show reversible error.

**B. Palmer fails to show error in the RFC assessment.**

Palmer argues that the ALJ failed to properly assess the medical evidence, leading to errors in the RFC. (*See* Doc. 16 at 17–24.) She first asserts that the medical evidence supports more extensive impairments in her abilities to walk or stand. (*See id.* at 18–21.) She also contends that the ALJ erred by relying on one medical record over another in making his Step Two findings.

(*See id.* at 23–24.) As outlined above, however, substantial evidence supports the ALJ's RFC findings. Specifically, in determining the RFC, ALJ Leppala summarized medical records showing "mostly normal physical examinations[,]" (*see* AR at 29 (citing AR at 395–96, 404, 414)), Woog's finding of a "mild systemic disease and no functional limitations[,]" (*id.* at 29 (citing AR at 405)), and the consultative examiner's conclusion that Palmer has no physical limitations (*id.* at 28 (citing AR at 393).) Regardless, in making his findings, the ALJ considered the medical records that Palmer contends he should have used at Step Two. (*See* AR at 28 (citing AR at 459), 29 (citing AR at 490).) In short, the Court finds the ALJ's RFC determination is supported by substantial evidence.

Palmer also contends that the ALJ erred at Step Two by not finding a severe impairment of her left shoulder. (*See* Doc. 16 at 24.) As the Commissioner responds, however, "[t]he ALJ expressly noted the May 2023 left shoulder x-ray in evaluating [Palmer's] workplace functional abilities." (Doc. 22 at 10 (citing AR at 27, 456–58).) The ALJ further observed that the consultative examiner recorded "largely intact range of motion (including normal shoulder range of motion) and largely normal strength (including normal arm strength)." (*Id.* (citing AR at 28, 392–94).) It is established law in this circuit that "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). As ALJ Leppala found severe impairments and considered Palmer's shoulder impairment in determining the RFC, the Court finds Palmer's argument on this point does not warrant remand.

In sum, because the ALJ's findings are supported by substantial evidence and Palmer fails to establish reversible error, the Court finds that the motion to remand will be denied.

**IT IS HEREBY ORDERED** that Palmer's Motion to Reverse and Remand to Agency

(Doc. 16) is **DENIED**.

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*PRESIDING BY CONSENT*